Good morning. My name is Mark Schneider, and I represent Butte County. With me at council table is my partner, Carol Smoots. And also in the courtroom this morning is the Chairman of the Butte County Board of Supervisors, Bill Connolly, as well as the County Counsel, Bruce Alpert. With the panel's permission, I would like to reserve time for rebuttal. The FERC orders should be reversed and remanded because the licensee has not complied with the requirements of the Federal Power Act, applicable FERC regulations, and the license. I'd like to briefly address those requirements and show how the licensee has not complied with any of them, and then respond to the major arguments advanced by the FERC and the interveners. Butte County filed a complaint under FERC Rule 206, and that rule allows for a party to obtain relief for noncompliance with any law, regulation, order, or for, quote, any other alleged wrong. Butte County was entitled to relief. If it could demonstrate noncompliance with any of those requirements, we demonstrated noncompliance with all of them. Federal Power Act Section 10C requires a licensee to conform to FERC rules and regulations protecting, quote, life, health, and property. And 18 CFR 2.7 is one of those rules. That requires that the licensee provide for safe public access and recreation at facilities licensed by FERC. Standard Articles 3 and 7 of the license similarly require that the licensee provide safe recreational and navigational access. The licensee has not complied with any of those requirements. The licensee does not itself deploy law enforcement, and it does not make other arrangements for those requirements to be met. It is undisputed that Butte County is the primary provider of law enforcement and first responder services. It's undisputed that Butte County is in dire financial shape. We've suffered from terrible budget cutbacks. We have imposed massive layoffs. And it's undisputed, even FERC found, that we suffer a net loss from the operation of the project. In these circumstances Sotomayor, wasn't all that contemplated at the time the license was originally granted, that there would be a loss to the county because of the services that would be required? No, Your Honor. In 1957, when the license was issued, there was no contemplation of that. And, in fact, no one would have predicted that this area was going to receive 1.7 million visitors per year. Was there any contemplation of a loss to the county? There was no contemplation at the time of a loss to the county, no, Your Honor. What happened is, essentially, you had a free-flowing Feather River. It was a wonderfully rich river. People would raft on it. They would fish on it. They would kayak on it. And then, essentially, once the river was dammed up and this massive structure was put into place, the whole economy of Butte County stagnated. It got to the position which has been exacerbated over the years. But, initially, after the dam was put in, our unemployment went up three times. Our welfare went up four times. And, essentially, we became an economically stagnant community. What happened is, once the budget crisis of the late 2007, 2008, 2009 happened, then the loss became much, much more significant. Butte County has been required to subsidize these 1.7 million visitors who come every year. They're going to visit an area that's ---- The fact that there's what you call a subsidy involved is a matter of State law, isn't it? No, Your Honor. It's not a matter of State law. You're required to provide these public services by State law, right? State law does require that. And, you know, the licensee here under State law is not required to reimburse you for those services. That's not correct, Your Honor. State law doesn't say anything about reimbursement or not. But this is a proceeding under the ---- But that's exactly my point. It's not required by State law. State law is silent on the question. State law simply says that we are required to provide law enforcement services. Have you gone to the State legislature for relief? Excuse me? Have you gone to the State legislature for relief? Unfortunately, the political reality is the State water contractors are so much more powerful than Butte County is that we've had no success whatsoever. But the issue before this Court is what are the FERC requirements, and are they met? And FERC requirements says you have got to provide for public access and it's got to be safe. And the only way in these circumstances to comply with those requirements, since the licensee is not discharging those requirements and Butte County is and Butte County can't afford to continue, the only way to ensure compliance with those requirements is if FERC orders the licensee to reimburse Butte County. FERC in its own studies, in FERC's final environmental impact statement, this is on pages 135 and 136 of the record. Excuse me, 155 and 156 of the record. FERC does a line-by-line item analysis of the various costs that Butte County incurs solely as a result of this project. And although FERC doesn't conclude, as we have suggested, that our out-of-pocket costs equal $5.8 million per year, FERC reached the conclusion that our out-of-pocket costs were $1.7 million per year. And if I could. That's what I was referring to in the final environmental impact statements. There was contemplation that there would be financial impact on the county, which is between $1 million and $6.9 million annually. So that was contemplated in the final environmental impact statement, that this project would have fiscal impact on the county. I'm sorry. I didn't understand your question. In the 1957 issuance of the license, there was no final environmental impact statement because NEPA didn't even exist. The document that's the FERC final environmental impact statement that Your Honor was just referring to, that was prepared in connection with the relicensing of the facility, which hasn't yet happened. There's a whole separate discussion as to what's going to happen when the new license is issued. And we are certainly hopeful that when the new license is issued, it will require reimbursement of our out-of-pocket expenses. But right now, based upon the record that FERC has prepared, they're saying under the current 1957 license, which is continuing to be in existence, Butte County is losing, they say, $1.7 million per year. And on pages 155 and 156, they itemize the various items. They say, okay, Butte County is losing money for I'm reading from page 155 of the experts' record, law enforcement, criminal justice, crucial asset protection, fire and rescue, road maintenance, and emergency operations. But then FERC, FERC says licensing, you're required to provide for safe public access. And we recognize that it's costing Butte County $1.7 million a year. And here's where they acted arbitrarily and capriciously and unlawfully. FERC says in their footnote on that document, footnote number 98, they say, well, quote, our estimate of project-related costs should not be interpreted as a recommendation that the licensee reimburse the county for those costs. That's arbitrary. It's capricious and unlawful. Why? Why is that arbitrary or capricious in view of the fact that the license did not specifically provide for a subsidy and FERC has consistently ruled that it's not appropriate for licensees to subsidize municipal services? I'll respond in two parts, if I may. Firstly, it's arbitrary and capricious and unlawful to require as part of the license that the project area be made available to the public safely for recreation and for navigation and for other purposes. You've got a requirement for safe public recreation and access. You have a determination by FERC that that causes a loss. You've got a determination by FERC that the cost is at least $1.7 million per year. But you also have a determination by FERC that that loss is not to be subsidized by the licensee. With respect, Your Honor, that's not correct. When the license was issued in 1957, there was no discussion of loss at that time because it was not anticipated at that time that it would cause the loss. And if I may, the second answer to the question, Your Honor, it said, well, FERC has repeatedly ruled that it's not going to require those subsidies. And what FERC has pointed to in that are three decisions of the Federal Energy Regulatory Commission. None of those have been appealed to the court of appeals. None have been affirmed. None of those cases involve our complaint under Section 206 of the FERC regulations. Each of the cases that FERC and the licensee rely upon, those were cases where a new license was issued in recent times. And FERC says in connection with those new licenses, we're going to determine we're not going to require funding for law enforcement. But that's not our case. And it's not our case for several reasons. Number one, we filed a complaint under 206 of the FERC regulations to say if you're going to set a requirement for safe public access, you have to require that that be met. And it can't be met by requiring the licensee to do that. And so the only way to require that is by reimbursement of our out-of-pocket expenses. Exactly. What does that mean in the license, safe public access, with emphasis on the word access? What does that mean? It means that access must be provided in a way to allow the public to enjoy it. The license says, Article 3 says, excuse me, Article 7, licenses, licensees required to, quote, allow the public free access and for the, quote, purpose of full public utilization of such lands and waters for navigation and recreational purposes. If you're going to require access and you're going to require that it be full and the public can enjoy it, it's got to be safe. That could mean the roads have to be free from defect. I mean, it doesn't necessarily mean we are reviewing FERC's decision. And so FERC could have said that that means subsidizing police and fire services. But can we say that FERC has to interpret that provision that way? In these facts of the case, Your Honor, we respectfully suggest that the answer is yes. And perhaps it's helpful to step back and talk a little bit about the Federal Power Act. FERC has under the Federal Power Act comprehensive authority to regulate this project. And what FERC decides under the Federal Power Act, it says, licensees, we're going to give you permission. We're going to give you a monopoly to use for 50 years the public resources. You can divert navigable waters. You can take this water. You can generate power with it. You can sell it to the tune of $1 to $2 billion a year in revenues. We're giving you the right to use these public resources. And in exchange, what you have to do is you have to give something back to the public. You need to make this available to the public and it's got to be safe. In these circumstances where the licensee itself is not providing for law enforcement, the only result based upon these facts would be the order requiring the licensee to reimburse Butte County for the cost that it incurred. At this point, I'd like to reserve my remaining time for rebuttal. All right. Thank you. Good morning. I'm Katherine Henry for the commission. I would like to take the first 15 minutes of the allotted 20 minutes to present the commission's argument. And the remaining 5 minutes will be used by counsel for interveners, Mr. Sensaba. There are really three main issues in this case. The first one is that the commission appropriately found that the county did not demonstrate that DWR violated either its license or the commission's regulations. Those were the first two allegations that were made in the complaint that was brought before FERC. Neither Article 7 or 14, which were cited by Butte County, the commission appropriately found that, in fact, the DWR, the licensee, had, in fact, complied with those license obligations. There was no evidence that DWR was not allowing public access, and there was no evidence that DWR was not cooperating with local law enforcement. But there's no dispute, is there, that the county is incurring substantial financial obligations in providing coverage for the project premises. There's no dispute about that, is there? That's correct. And does the department object in principle to assuming some of the costs for that? When you say the department, do you mean the Department of Water Resources, the licensee? Right. The licensee. Does the licensee object in principle to contributing to the financial cost of protecting this project? Yes. Well, in fact, there's evidence in the record that the county had – I mean, I'm sorry, that the licensee has won off-license agreement with the county to provide surveillance and patrolling in a particular part of this project. So I don't think that DWR objects in principle. However, the policy of the commission has been to draw a line between safety problems that are associated directly with the purposes of a project. And Judge Rawlinson used the example of roads. In some circumstances, the licensee would be responsible for a road if it was the only access to the project. But the commission has drawn a line between safety issues that are directly related to the project and safety issues that are really related to incidents that don't have anything to do with the project purposes. Well, one of the conditions of the license is that the project be open to public recreation, right? That's correct. So isn't it within the authority of FERC to require the licensee to be responsible for the cost of the public recreation? Well, I don't think it's really a question of authority. I think that the commission has broad authority here to address issues in a variety of ways. But I think the issue here is whether the licensee has violated its license or the commission's regulations. Well, for instance, the 50-year license has been subject to renewal for several years now, right? It's up for renewal. That's correct. And the relicensing proceeding is ongoing. So is it within the authority of the commission and the renewed license to insert such a provision? I think that the commission does have that authority in the relicensing proceeding. But the commission does not have the authority here. Is that an issue now in the renewal proceeding? That is an issue in the relicensing proceeding, yes. So it's an issue that will be addressed in the renewal proceeding. That's correct. But your position is that the current license has no such provision. That's correct. There's no license requirement that the licensee reimburse the county for its law enforcement services. And there's no requirement in the commission's regulations either. Do you agree with opposing counsel that no court of appeals has ruled on this issue at all? So the FERC rulings are the only rulings we have regarding this issue? Well, in terms of FERC's policy, to draw a line. In terms of the licensee being responsible to contribute to the law enforcement, the cost of law enforcement in policing the project, is there any case in the nation that has addressed this issue? I don't believe that there is. You know, this is a matter of FERC's policy and its precedent. But it has taken that position in a number of policy statements and precedent and not just involving the fact that they involve new licenses. I don't think it's really a distinction. Right. But we, you know, as a reviewing court, we could determine that that stance is arbitrary and capricious in view of the obligation of the licensee to keep the premises safe for public use. Well, I think that FERC's interpretation of what that safety obligation means, both in its precedent and its policy, is entitled to substantial deference. And I think that the Court would have to decide, if it were to say that that policy were arbitrary and capricious, that it was plainly erroneous in view of the statutory requirements and the regulations. And I think that the county cannot make that case here. The other, the complaint was really the main part of the county's case. And it's kind of a subsidiary argument. The county has argued that FERC had the authority to reopen the license unilaterally and to impose interim conditions requiring compensation. I would submit that FERC, in fact, did not have that authority here. The county fails to mention the Federal Power Act, Section 6, which does not, which forbids amendment of a license in the absence of the concurrence of the licensee, which, of course, DWR has not given its concurrence here. There's also no reopener clause here. And so FBA Section 6 prevents the commission from reopening this license, even assuming that it wanted to impose these conditions. It could not. And the last point is that the county is not without a remedy here. The licensing, relicensing proceeding is ongoing, and this issue is appropriately being considered there. I think that is the appropriate forum for this general reimbursement issue to be raised. And I think that the commission has discretion about which forum to address this issue, especially here where it's clear that there was no violation of either the statute, the existing license, or the commission's regulations. Finally, I'd just say that the county's real complaint here, it's apparent that the real complaint is that the licensee is exempt from paying property taxes, which is a matter of State law, and that the State has cut funding to the counties. And, you know, while the commission is certainly sympathetic to that situation, it's still not a project purpose to protect the economics of the county. And again, we submit that there's been no showing of a violation here in terms of the safety obligations of the licensee. So we would ask that the Court deny the petition for review, unless there are further questions. It appears not. Thank you. Can we hear from the intervener? Good morning. May it please the Court? Charles Sensaba for Intervener Department of Water Resources. Today in argument and in the briefs, Butte County has taken the position that the Department of Water Resources Oroville Facilities Project imposes substantial uncompensated costs on the county, and that the public safety at the project is compromised. These statements are incorrect, and they are not supported by the record in this case. In reality, the record in this case clearly establishes that project facilities safely accommodate, on average, 1.7 million visitors each year, and that an interagency network of multiple public safety and police and fire services protect those visitors each and every day. That's the point. The point is that Butte County is one of those agencies that's protecting the project at substantial financial loss, and that the operators of the project should kick in a fair share of the financial cost. What you have heard today, Your Honor, is a statement from Butte County that the recreating public at the Oroville Facilities Project is unsafe, and that that's the reason why the commission needs to intercede here. No, that's not the argument. The argument is but for the services that are provided for Butte, provided by Butte County at substantial expense, the project, the premises would be unsafe. Well, even that premise is not correct, Your Honor, because at the project, Butte County is by far not the only agency that's protecting the public. The same final environmental impact statement that Butte County relies on on those same pages identifies no less than ten other agencies, including California Fish and Game, California Department of Parks and Recreation. I don't know the point of this argument you're making, but you're not contesting that Butte County spends substantial amounts of public funds to bring public services to the project area, are you? No, Your Honor. Second, you're not contesting that Butte County is not reimbursed for those services, are you? In terms of Butte County's And that DWR pays no property taxes. We recognize that You're not contesting those facts, are you? No. But what we are contesting, Your Honor, that if the county were to look at the big picture here, certainly there is a hit to revenue, but there are immense benefits provided by this project that the commission's final environmental impact statement identifies but does not address. Benefits to Butte County, they don't get water from it, don't get property taxes, don't get reimbursed for the services that are provided. So what are the benefits? The benefits, Your Honor, are the fact that this project is an immense flood control facility that protects every day over 70,000 acres in Butte County. Before the construction of this project, this area was subjected to frequent flooding, and just in 1997 alone, with the immense flood and high waters that were experienced that year, the Corps of Engineers concluded that the project provided over $1 billion in property savings because of the flood control abilities of this project. There are people who come to Butte County who have jobs and open businesses, who do pay property taxes. The final EIS says that the project creates over 1,000 jobs in Butte County, that there are over 20. The final EIS also said that there would be a negative fiscal impact to Butte County because of the operation of the project. And what the FEIS did not address, Your Honor, were, number one, flood control benefits, and, number two, it did not account for the increased property tax values that occur in Butte County because of its proximity to such a major recreation area. Well, we're left with the findings that were made in the final environmental impact statement. And so perhaps the preparers of that document were not as convinced as you are that those are benefits that should be recognized. Your Honor, what the FEIS did, it identified those and said that in the confines of its, again, focused FEIS, it did not quantify what those benefits are, but it did identify them as benefits. And it's our position that if you look at the big picture here and the immense benefits that this project provides this community each and every day, Butte's very narrow economic analysis is skewed. So is it your client's position that it should not contribute to the fiscal impact that providing public safety services costs? Is that your client's position? Our position is that this is not a matter for FERC to deal with. What about in the relicensing arena? Are you saying that FERC cannot address that point in the relicensing context? Your Honor, Butte County has raised that issue in the relicensing context. And we have opposed that in the relicensing context. And that is a case that is pending right now before the commission. But look at what we have done at this project. To answer your Honor's questions, we have entered into a contract with Butte County to increase patrols at two areas at the project. We've also entered into a contract to increase patrols in the presence of wardens, two positions that patrol within Fish and Game that only patrol one part of the project. We have a commitment to public safety at this project. And the recreating public at this project is safe. Does your client benefit financially from the operation of this project? Your Honor, we are a State agency. We provide water. You didn't answer my question. State agencies can make money, too. So my question is, does your client benefit financially from the operation of this project? No, we do not. Do you sell water? We do sell water. The power that's generated at this project goes to the pumping facilities that provide this water to the State water contractors. Are you self-sustaining as a department, or do you get money from the State for operation? We do receive our money from the State, Your Honor. Okay. And so you don't get any money over and above what the State funds you for operation of the department? Your Honor, I cannot answer that question. I am Federal Energy Regulatory Commission counsel for the State Department of Water Resources, so I do not know the answer to Your Honor's question. Unless there are further questions, thank you. If there are no further questions, rebuttal. Thank you, Your Honor. I'd like to make three quick factual points and then two responsive arguments. One, the question was, does the licensee make any money off of the water? In fact, the State contractors make a significant amount of money over the water. They were one of the interveners in this case. They receive revenues of between $1 billion and $2 billion per year. Secondly, counsel made a reference to a contract with Butte County. That was a contract to provide payment of $190,000 to police a particular area. It's a drop in the bucket compared to what we contend is the $5.8 million that we suffer in losses each year, in which FERC acknowledges is a loss of at least $1.7 million. The last factual matter is the question about flood control that was raised. What's caused the need for flood control is the dam itself. Prior to this time, this was a vibrant river. It was a free-flowing river in a logging town. Now it's been dammed up, and that's caused the flood issues. Let me turn to two of the arguments, though, that were raised. One has to do with deference to FERC policy that was raised by counsel for FERC, and the other was the notion of, well, this can all be remedied in the relicensing proceeding, and neither one of those are the case. First as to there should be no deference to the FERC policy, and that's because this FERC policy does not even apply to this case. FERC has cited four decisions of FERC where, in the context of a relicensing proceeding, FERC said we're not going to require the funding of salaries for law enforcement. That's not our case. Our case is an action under FERC Rule 206. It's 18 CFR 385.206. And when a complaint is filed under Rule 206, FERC's got two things that it can do with it. It can either resolve the issue on the merits based upon the papers, or it can have a hearing and then resolve the matter. It also has a third option. It could divert the matter to alternative dispute resolution. But when it's acting in the Rule 206 context, it's acting as an adjudicatory body. We've presented evidence that there is noncompliance with the Federal Power Act, with the rules, and with the license. In that context, FERC must evaluate the evidence and make a ruling based upon the evidence. It can't rely upon its policy. The evidence establishes that there is noncompliance with the Federal Power Act, with the rules, and with the articles of the license. What's your response to opposing counsel's observation that Butte County is taking an extremely narrow view of the public safety obligations? Your Honor, for every day that we're out there saving people, investigating homicides, drug problems, hazardous substance ‑‑ excuse me, hazardous materials violations, unauthorized cars parked in secure places, every single day we are out there making sure that this is safe. We don't think it's a restrictive reading. Safety means safety. We've got more people coming there every year than live in San Francisco. The size of this facility, 64 square miles, it's larger than San Francisco. We are a tiny county of 240,000 people. We cannot afford to be providing the licenses obligation to comply with the license. The last thing I wanted to raise has to do with, well, this can all get cured in the relicensing proceeding. It can't. And the reason it can't is the relicensing proceeding is only going to be prospective. The license expired in 2007. It's now 2011. Who knows when the new license is going to be issued? Next week? Next year? Next decade? We're not sure. But regardless, once the new license is issued, it's only going to have prospective application. It's going to say, going forward, thou must do thus and such. But it doesn't have retroactive application. It can't cure the past problems. We filed our complaint to receive reimbursement for the cost that we have been out of pocket from the time of the complaint in 2009 until the time the new license is issued. That will never be addressed in any licensing proceeding. And the final point I will make is this isn't going to kind of open up FERC. This isn't going to kind of open it up to FERC at virtually every hydroelectric plant in the nation. You don't have this problem. And the reason you don't have this problem is because licensees either take care of public safety themselves or they make arrangements with other parties, with the local jurisdictions, to do so. They haven't in this case. That's why we brought our action. So we respectfully request that, based upon the evidence, the Court reverse and remand the FERC orders. Thank you. Thank you. Thank you to both counsel for your argument. The case is submitted for decision by the Court. We will be in recess until 9 a.m. tomorrow morning. All rise.
judges: Tashima, Rawlinson, Cjj Rakoff (S. New York), Dj